IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Lee V. Jones, Jr., ) | Case No. 8:13-cv-00334-DCN-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Cpl. Robert Hartwig of Kershaw ) | |
| Correctional Institution, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment by Defendant Robert Hartwig ("Hartwig" or "Defendant"). [Doc. 28.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action alleging a violation of his constitutional rights pursuant to 42 U.S.C. § 1983 on or about February 4, 2013.[1] [Doc. 1.] Defendant filed his motion for summary judgment on July 29, 2013. [Doc. 28.] By order filed July 30, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 30.] Plaintiff filed a response in opposition to

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on February 4, 2013. [Doc. 1 at 5 (Complaint dated February 4, 2013); Doc. 1-1 (envelope stamped received by prison authorities on February 4, 2013).]

the motion on November 18, 2013 [Doc. 41] and supporting documents on November 15, 2013 [Doc. 39]. Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff is incarcerated at the Kershaw Correctional Institution, a part of the South Carolina Department of Corrections ("SCDC"), in Kershaw, South Carolina. [Doc. 1 at 2.] Plaintiff alleges Hartwig is a prison official working at Kershaw Correctional who violated his constitutional rights by physically assaulting him on December 2, 2012. [*Id.* at 3-5.] Specifically, Plaintiff alleges he approached Hartwig to ask him a question and Hartwig slapped him in the face for no reason. [*Id.* at 3.] Plaintiff alleges he informed Officer Catoe, who took over Hartwig's shift after the incident occurred, that he took medication for seizures and needed to see a "white shirt" as a result of the incident with Hartwig. [*Id.*] Plaintiff alleges his request was denied three times. [*Id.*] Plaintiff states that he has complained about Hartwig "putting his hands on [him]" and that he feels his life is in danger as a result, but nothing has been done. [*Id.*] Plaintiff claims he has a right to be protected from assault at the hands of an SCDC officer and that he has not been protected. [*Id.* at 4.] Plaintiff claims that Hartwig's intentional actions violate his Eight Amendment right against cruel and unusual punishment. [*Id.*] Plaintiff seeks $2,000,000 in actual damages and claims the actions of Hartwig have left him "permanently emotionally afraid of SCDC officer[s]", and that the unprofessional and negligent conduct of the "staff at Kershaw Corr[ectional] Inst[itution]" have caused him mental and emotional stress. [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under

3

color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct

of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendant has moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing this action and, therefore, the claim is

barred under the Prison Litigation Reform Act ("PLRA"). [Doc. 28-1 at 2.][2] The Court agrees. Plaintiff contends, however, that he misunderstood the administrative process because he thought he could file a court complaint after he submitted his Step 1 grievance and received the denial. [Doc. 41 at 1-2.] He requests time to allow him to continue with filing a Step 2 Appeal. [*Id.* at 4.] Plaintiff also argues that this Court should excuse his failure to exhaust because otherwise he will experience irreparable injury and because the grievance process is unfair. [*Id.* at 1-3.] Further, Plaintiff seems to contend that the Step 2 Appeal process was not available to him because the Inmate Grievance Coordinator ("IGC") interfered with his ability to complete the process. [*Id.*] Specifically, he asserts that he "did write I.G.C. Pamela Hough a request, once he was inform (sic) that she would help him fill out his a (sic) grievance, and has even tryed (sic) to talk to her as she walk through this unit, but never got a respond (sic) back on the request, nither (sic) did she have the time to stop and talk to me. . . ." [*Id.* at 2.] Plaintiff appears to concede that he did not exhaust his remedies and therefore requests in his response either a 90-day stay so he can complete the grievance process or a dismissal without prejudice. [*Id.* at 3-4.]

**Exhaustion of Administrative Remedies**

Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

---

[2] Defendant also seeks summary judgment on other grounds. However, because the Court finds that Plaintiff failed to exhaust the administrative remedy process and this action is barred for that reason, the Court need not address the remaining grounds.

7

as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate

failed to proceed beyond the first step in the administrative grievance process); *but see, Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681. However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

### *SCDC Grievance Procedures*

The Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA–01.12. In *Jones v. Kay*, 2007 WL 4292416, at *5 (D.S.C. Dec.5, 2007), the court summarized the parameters of this policy as follows:

- (1) an inmate must fill out a Form 10–5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;

- (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;

- (3) the Warden should respond to the grievant in writing within forty (40) days;

- (4) the inmate may appeal by completing a Form 10–5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and

- (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.

See SCDC Policy GA–01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

### *Plaintiff's Attempt to Exhaust*

Defendant produced evidence from Ann Hallman, the Branch Chief for the Inmate Grievance Branch, that Plaintiff filed a Step 1 Grievance on December 6, 2012. [Doc. 28-2 at ¶¶ 1–4.] The Step 1 Grievance was directed to Plaintiff's complaint that Hartwig slapped him in the face, that his request to see a white shirt was denied, and that he was being targeted for bringing the charge to the administration's attention. [*Id.* at 3.] On December 10, 2012, Plaintiff was informed that the grievance was forwarded to the Division of

Investigations for review. [*Id.* at ¶ 5.] On February 1, 2013, a Warden's Decision was issued in response to the Step 1 Grievance, finding that Plaintiff had slapped Hartwig on the wrist and that Hartwig pushed Plaintiff away; the decision indicated there was no evidence that Hartwig slapped Plaintiff. [*Id.* at ¶ 6.] On February 7, 2013, Plaintiff indicated that he accepted the Warden's Decision and elected not to file a Step 2 Appeal and considered the matter closed. [*Id.* at ¶ 7.] As evidence of Plaintiff's decision, he signed the grievance form indicating he wished to close his matter and dated his signature February 7, 2013. [*Id.* at 4.] Plaintiff could have appealed the Warden's Decision through the Institutional Grievance Coordinator through the Step 2 Appeal, but he did not. [*Id.* at ¶ 8.]

Plaintiff contends that he misunderstood the administrative process, is close to incompetent at times due to mental health medication, and was under the impression he could file his claim as long as he had filed a grievance on the issue. [Doc. 41 at 1.] Further, Plaintiff asserts that he did not understand how to complete the next step in the grievance process because he was in "lock up," and that "he was under the impression that it was time to file his claim, and was afraid that his statute of limitation would run out." [*Id.* at 1-2.] Plaintiff also claims he "felt like he would get more help from the court's more faster then(sic) the prison system." [*Id.* at 3.]

Provided a prisoner was made aware of the grievance procedure, this Court may not excuse Plaintiff's failure to file a Step 2 Appeal on the ground that he allegedly did not understand how to file it or because he believed that filing a complaint in court would result in quicker justice. *See Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (where the

prisoner was given a handbook that contained references to the jail's grievance policy and the orientation session explained the existence of a grievance policy, the court found that the prisoner knew of the existence of the grievance procedure and his failure to comply with the process and to ask more questions about how to comply with the process was his own fault and did not excuse his failure to exhaust); *Kearse v. Patterson*, C/A No. 9:12-1704-MGL, 2013 WL 4511637, at *3 (D.S.C. Aug. 22, 2013) (where prisoner failed to properly pursue a Step 2 Appeal despite being advised how to properly file it, the court would not excuse compliance with the exhaustion requirement on any basis); *Corbett v. Fleming*, C/A No. 9:12-3431-JFA-BM, 2013 WL 4866502, at *5 (D.S.C. Sept. 11, 2013) (where prisoner received a response to his Step 1 Grievance and failed to file an appeal despite being advised of the need to do so, the court would not permit the prisoner to proceed in the court with a complaint); *Gates v. Ball*, No. 2:10-CV-00077 DPM/JTR, 2011 WL 2745920, at *3 (E.D. Ark. June 8, 2011) (finding that a prisoner's subjective understanding, logical or otherwise, of the prison grievance process is irrelevant to a determination of whether proper exhausted was completed), *adopted*, 2011 WL 2745796 (E.D. Ark. July 14, 2011).

    Here, the evidence before this Court indicates that Plaintiff accepted the Warden's decision to deny the Step 1 grievance, elected not to file a Step 2 Appeal, and considered the matter closed. The exhibit attached to Hallman's Affidavit shows that the grievance form explained the grievance procedure to Plaintiff and informed him that he could have elected to file an appeal; Plaintiff, however, affirmatively decided against it and signed that affirmation, declining to proceed with the Step 2 appeal. Plaintiff's later assertions in his

response brief[3] that he did not understand the process do not present a disputed fact over whether he properly filed a Step 2 Appeal. *See McDowell v. Ozmint*, C/A No. 3:10-1959-CMC-JRM, 2011 WL 2731202, at *3 (D.S.C. June 3, 2011) (finding that the prisoner failed to exhaust the administrative process because he did not properly follow the applicable policies concerning the filing of grievances), *aff'd and adopted*, 2011 WL 2670287 (D.S.C. July 7, 2011).

Plaintiff seeks to have this Court excuse his failure to file a Step 2 Appeal to prevent *unspecified* irreparable injury and because the grievance process is unfair; however, the Court finds these arguments to be without merit. The United States Supreme Court has refused to read exceptions into the § 1997e(a) exhaustion requirement. *Booth*, 532 U.S. at 741 n.6; *see also Kearse v. Patterson*, C/A No. 9:12-1704-MGL, 2013 WL 4511637, at *3 (D.S.C. Aug. 22, 2013) (where prisoner failed to properly pursue a Step 2 Appeal, the court would not excuse it on any basis). Prevention of an alleged, undefined irreparable injury is not an exception to the PLRA's exhaustion requirement; however, even if it is an exception, Plaintiff has not presented any evidence of an irreparable injury that he has or will suffer. *Cf. Stroman v. Bearden*, C/A No. 9:06-2055-PMD-GCK, 2007 WL 2973516, at *5 (D.S.C. Oct. 9, 2007) (where the prisoner alleged impending medical problems that were not being treated, the court indicated that an irreparable injury exception to the PLRA's exhaustion requirement most likely does not exist, but, if it does exist, the prisoner did not satisfy such a claim), *aff'd* 273 F. App'x 274 (4th Cir. 2008); *see also Khalid v. Herczeg*,

---

[3] Because Plaintiff apparently had a notary witness the brief and swear to it, giving liberal construction to the pleading, this Court will consider it as if it is an affidavit by Plaintiff. However, a self-serving affidavit by a plaintiff is not enough to create a genuine dispute as to any material fact in light of contrary documentary evidence that disputes the credibility of the plaintiff's self-serving claims. *Poe v. Bryant*, C/A No. 9:12-3142-RMG, 2013 WL 6158023, at *2 (D.S.C. Nov. 21, 2013).

No. 1:03-CV-154 (WLS), 2006 WL 1735874, at *1 n.1 (M.D.Ga. June 21, 2006) (finding that there is no exception based on irreparable injury with regard to exhaustion under the PLRA). Moreover, it is well-settled that prison inmates do not have a constitutionally protected right to a grievance procedure. *See, e.g., Jones v. North Carolina Prisoner's Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J. concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("the Constitution creates no entitlement to [prison] grievance procedures or access to any such procedure voluntarily established by a state.") (citations omitted). Because a prison grievance procedure does not confer any substantive right upon inmates, it does not give rise to a protected liberty interest requiring the procedural protection provided by the Fourteenth Amendment. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993). Furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees covered by that system. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988). As a result, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under § 1983. *See Spencer v. Moore*, 638 F.Supp. 315,316 (E.D.Mo.1986); *Azeez v. DeRobertis*, 568 F.Supp. 8, 9-11 (N.D.Ill.1982). Accordingly, because the Court concludes Plaintiff has failed to present sufficient material facts to show he did exhaust his administrative remedies, it recommends Defendant's motion for summary judgment be granted on that ground.

### *Interference with Administrative Process*

In Plaintiff's response brief, he attempts to suggest that he could not file a Step 2 Appeal because Pamela Hough refused to assist him. Specifically, he asserts that he "did write I.G.C. Pamela Hough a request, once he was inform (sic) that she would help him fill out his a (sic) grievance, and has even tryed (sic) to talk to her as she walk through this unit, but never got a respond (sic) back on the request, nither (sic) did she have the time to stop and talk to me. . . ." [Doc. 41 at 2.] The only reasonable inference from Plaintiff's assertions is that *after* he chose not to appeal on February 7, 2013, by so indicating on the Step 1 Grievance form, he unsuccessfully attempted to talk with Pamela Hough as she walked by his unit. The Court finds Plaintiff's suggestion of interference with his ability to complete Step 2 unpersuasive. Plaintiff's own decision to consider the matter closed and not submit an appeal is the reason the administrative exhaustion process was not completed. *See Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (noting that "in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure"). Plaintiff has failed to show that, through no fault of his own, he was prevented from filing a Step 2 Appeal.

### *Request to Stay this Action to Permit Exhaustion*

It is well settled that a prisoner must exhaust administrative remedies before filing a § 1983 claim concerning the prison condition, and a "prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation." *Peoples v. Burtt*, C/A No. 8:07-2702-CMC-BHH, 2008 WL 2315865, at * 2–4 (D.S.C. May 30, 2008). Thus, Plaintiff is not entitled to a stay of this action pending his exhaustion of the administrative process.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment [Doc. 28] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/ Jacquelyn D. Austin</u>
United States Magistrate Judge

December 16, 2013
Greenville, South Carolina